**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**MATTHEW LYDICK,**
**Claimant Below, Petitioner**

**vs.)    No. 21-0863** (BOR Appeal No. 2056790)
                    (Claim No. 2019023086)

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Respondent**


**MEMORANDUM DECISION**

Petitioner Matthew Lydick, by Counsel J. Thomas Greene Jr. and T. Colin Greene, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Murray American Energy, Inc., by Counsel Aimee M. Stern, filed a timely response.

The issue on appeal is Mr. Lydick's entitlement to medical treatment for his compensable injury. The claims administrator denied a request for a one-time consultation with Michael Bowman, M.D., on January 21, 2021. On May 14, 2021, the Workers' Compensation Office of Judges ("Office of Judges") affirmed the claims administrator's decision. This appeal arises from the Board of Review's Order dated September 20, 2021, in which the Board affirmed the Order of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

> (c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

1

(d) If the decision of the board represents an affirmation of a prior ruling by both the commission and the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo reweighing of the evidentiary record . . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

On May 3, 2019, Mr. Lydick sustained a crush injury to his left foot in the course of and resulting from his employment with Murray American Energy, Inc., when his foot became entrapped under a hydraulic bucket scoop while performing his job duties. He was transported to the Emergency Department at Wheeling Hospital from his worksite and referred to Corporate Health, the preferred medical provider of the employer.

Mr. Lydick came under the care of C. Clark Milton, D.O., and Ross Tennant, FNP, at Corporate Health through Wheeling Hospital on May 6, 2019. A physical examination revealed ecchymosis and tenderness of the left foot. Mr. Lydick was observed walking without dorsiflexion and feeling pain at the metatarsals of the left foot. Dr. Milton diagnosed a crush injury to the metatarsals of the left foot and opined that Mr. Lydick was unable to work. He was advised to elevate his left foot and treat it with ice and compression. After Dr. Milton's diagnosis, the claims administrator issued an Order dated May 13, 2019, holding the claim compensable for a crush injury of the left foot.

Mr. Lydick began physical therapy and underwent an MRI of his left foot on May 29, 2019, which revealed the following:

The focus of abnormal signal at the base of the third metatarsal is probably related to small enchondroma but exact etiology is uncertain. It has a low aggressive MRI appearance and does not have the characteristics of trauma. Follow-up studies to help confirm stability. This is not visible on the recent plain films.

Mr. Lydick returned to Dr. Milton after the MRI, and the diagnosis of neuropraxia was raised as a possible condition. It was recommended that he treat with a podiatrist, and he later treated with Danny Fljalkowski, D.P.M., who diagnosed Mr. Lydick with a crush injury of the left foot and neuritis on June 25, 2019.

Mr. Lydick attempted to return to work, but he was only able to complete two shifts due to pain caused by the compression of his work boot on his left foot. On July 11, 2019, Dr. Milton

recommended that Mr. Lydick see an orthopedist for a second opinion. He subsequently treated with Prasadarao B. Mukkamala, M.D., who conducted an Independent Medical Evaluation on July 31, 2019. Dr. Mukkamala raised the issue of complex regional pain syndrome as a condition and recommended a three-phase bone scan. At the time, Mr. Lydick was not found to be at his maximum degree of medical improvement.

Michael Bowman, M.D., evaluated Mr. Lydick on August 30, 2019. He concurred in the crush injury diagnosis and found that Mr. Lydick had hypersensitivity of the superficial and deep peroneal nerves in his left foot. Dr. Bowman recommended desensitization therapy, Vitamin B12, Neurontin, and Lyrica. On September 2, 2019, Dr. Milton concurred with the recommendations of Dr. Bowman.

Mr. Lydick returned to Dr. Bowman on October 23, 2019. Further therapy and pain management were recommended. Dr. Bowman stated that if that treatment failed, the next treatment option would be a long-acting block of both nerves and neurectomy of the superficial and deep peroneal nerves in the calf to provide relief. On November 18, 2019, Dr. Milton diagnosed post-traumatic metatarsalgia with possible post-traumatic neuropraxia. Mr. Lydick was kept off work and referred for pain management services.

Dr. Mukkamala conducted another Independent Medical Evaluation on December 16, 2019. It was noted that Mr. Lydick reported that he could not wear a sock and shoe and could not let water hit his foot while showering. Again, Dr. Mukkamala found that Mr. Lydick had not attained maximum medical improvement, but he disagreed with Dr. Bowman's pain management recommendation. Dr. Mukkamala believed that Elavil would be an appropriate medicine to prescribe for Mr. Lydick's symptoms.

Dr. Mukkamala conducted a third Independent Medical Evaluation of Mr. Lydick on June 10, 2020. Although Mr. Lydick was reluctant to move his left foot and would not allow Dr. Mukkamala to touch it, Dr. Mukkamala found increased sensitivity over the dorsum of the left foot in a non-anatomical distribution. Mr. Lydick was found to be suffering from nonspecific pain complaints not supported by any objective pathology. A significant degree of symptom magnification was also noted. Dr. Mukkamala concluded that Mr. Lydick had reached his maximum degree of medical improvement without a need for further treatment. Although Corporate Health was seeking a referral to pain management, Dr. Mukkamala opined that there was no indication to refer Mr. Lydick to a pain management specialist, nor any additional diagnostic studies and/or treatment.

Dr. Mukkamala also concluded that Mr. Lydick is not a candidate for vocational rehabilitation, and stated:

> With relation to return to work, strictly looking at the compensable injury of 5/3/2019, the claimant is capable of returning to work. If the claimant finds himself unable to do so (perceived inability on his part), it will be because of some other noncompensable factors and not because of the compensable injury of 5/3/2019.

3

Using the American Medical Association's, *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993)*,* Dr. Mukkamala found 4% whole person impairment based upon Mr. Lydick's decreased range of motion.

Mr. Lydick returned to Corporate Health on July 1, 2020, reporting no improvement to his pain and discomfort. After examination, Mr. Tennant noted resolving ecchymosis to the distal aspect of the second digit, as well as sensitivity to the touch of the anterior aspect of the left foot. Mr. Lydick's diagnosis was post-traumatic neuropraxia of the left foot. He was asked to follow-up in six months. Subsequently, the claims administrator closed Mr. Lydick's claim for temporary total disability benefits in an Order dated July 23, 2020.

Mr. Lydick continued to complain of hypersensitivity and soreness on the dorsum of his left foot, and he returned to Dr. Bowman on November 2, 2020. Dr. Bowman found no ulcerations or lesions, normal color and temperature, and hypersensitivity on the dorsum of the foot involving superficial and deep peroneal nerve distribution. Normal plantar distribution and sural nerve distribution were found. Mr. Lydick was found to have good angle motion, good MCP motion, intact tendon function, and tenderness to palpation from the anterior hind foot distally. Dr. Bowman's diagnoses were crush injury to the left foot and hypersensitivity of superficial and deep peroneal nerve deep to the actual crush injury. Dr. Bowman stated, "structurally the foot is fine, very painful." Desensitization therapy was recommended, along with Vitamin B12 and Neurontin or Lyrica.

On January 15, 2021, Mr. Lydick's counsel requested authorization to receive a one-time appointment with Dr. Bowman. Counsel stated that Mr. Lydick continues to have problems with his left foot, and the treating physician will not schedule him for an appointment. The claims administrator denied Mr. Lydick's request for a one-time consultation with Dr. Bowman in an Order dated January 21, 2021. The claims administrator stated that Dr. Mukkamala found Mr. Lydick to be at his maximum degree of medical improvement and in need of no additional treatment.

Mr. Lydick protested the claims administrator's Order of January 21, 2021, and was deposed on March 22, 2021. He expressed that he continued to experience hypersensitivity to anything touching his left foot and wanted to seek medical treatment to permit a return to normalcy. Mr. Lydick could not obtain any care through Corporate Health to see Dr. Bowman. When questioned about his desire for a referral to Dr. Bowman, Mr. Lydick stated:

> Well, nothing improved on the foot. The pain, the swelling, everything increased over time. At some point it's limited and it's decreased but it keeps growing. More and more that I spend on the foot rather it's doing the basics of walking around the house and doing anything of the sort. So at that point, it came to a point where I just couldn't take it anymore. I had to go back on two attempts to try to discuss with Dr. Milton's office to see if I can basically get another – not another opinion, but an opinion of Dr. Bowman's office about how he felt about [the left foot] and so on.

4

Mr. Lydick testified that he returned to Dr. Milton's Office on July 1, 2020, and Mr. Tennant told him to return in six months for a progress check. When he returned to Dr. Milton's office several months later, he was told that he was found to be at maximum medical improvement and that there was nothing more Dr. Milton's office could do for him.

Mr. Lydick testified that Dr. Bowman was the only physician who developed a plan for his recovery and that he was unable to complete Dr. Bowman's plan. On cross-examination, he testified that when he first saw Dr. Bowman, the doctor was surprised that he was not taking physical therapy. However, Mr. Lydick was unable to testify whether Dr. Bowman scheduled him for a follow-up appointment.

In a Final Decision dated May 14, 2021, the Office of Judges affirmed the January 21, 2021, claims administrator Order, which denied Mr. Lydick's request to receive a one-time consultation with Dr. Bowman. The Office of Judges found that the record did not contain medical evidence indicating that a referral to Dr. Bowman is medically required. Because Mr. Lydick failed to submit any evidence for a consultation, it was determined that he did not prove by a preponderance of the evidence that a one-time consultation is reasonably required medical treatment for an injury received in the course of and as a result of his employment. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on September 20, 2021.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The claims administrator relied upon Dr. Mukkamala's assessment that Mr. Lydick has reached maximum medical improvement. The evidence of record also establishes that Mr. Lydick has treated with Dr. Bowman three times since the date of injury, and each time, his treatment recommendation has been essentially the same.

Affirmed.

**ISSUED: February 10, 2023**

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn